UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEBORAH HENNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:06cv104 |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court[2] for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act.  42 U.S.C. § 416(i); 42 U.S.C. § 423; 42 U.S.C. §§ 1382, 1382c(a)(3).  Section 205(g) of the Act provides, *inter alia*, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security, and thus he is automatically substituted for Jo Anne B. Barnhart as the Defendant in this case. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993); *Fox v. Heckler*, 776 F.2d 740, 738, (7th Cir. 1985).  It is well established that the burden of proving entitlement to DIB is on the plaintiff. 20 CFR § 404.1512(c); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted); 42 U.S.C. § 405(g).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 21, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2

  3. The claimant's status post broken foot, acid reflux; gastritis; headaches; low back pain and depression, are considered "severe" based on the requirements in Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

  4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

  5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

  6. The claimant has the following residual functional capacity: lift and carry up to 50 pounds, and 25 pounds frequently. Stand and walk for 6 hours in an 8 hour workday, with regular breaks, and sit for 2 hours. She can work around other employees during the workday, but have only occasional (1/3 of the time) communications and interpersonal interaction.

  7. The claimant's past relevant work as a cashier/checker; cook; dishwasher; inspector; wireworker; and wire harness assembler did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

  8. The claimant's medically determinable status post broken foot, acid reflux; gastritis; headaches; low back pain and depression do not prevent the claimant from performing her past relevant work.

  9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. 17-17A).

  Based upon these findings, the ALJ determined that the plaintiff was not entitled to DIB. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

  The plaintiff filed her opening brief on August 16, 2006. On October 2, 2006, the defendant filed a memorandum in support of the Commissioner's decision, and on October 23, 2006, the plaintiff filed her reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); *accord Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

The plaintiff filed her DIB and SSI applications on January 10, 2002, alleging disability as of December 12, 2001, due to status post broken foot, acid reflux, gastritis, headaches, low back pain, and major depression.

The plaintiff was 47 years old at the time of the ALJ's decision. (Tr. 60.)  She has a high school education, and worked in the past as a cashier, cook, dishwasher, packer, and inspector. (Tr. 102, 107.)

The plaintiff has a lengthy history of marijuana, crack cocaine, and alcohol abuse. (Tr. 329.)  She said she had last smoked marijuana in 2004, and continued to drink alcohol occasionally. (Tr. 444-45.)  She testified that she had never used cocaine. (Tr. 445.)  She

4

described a history of difficulty getting along with co-workers, and alleged poor concentration. (Tr. 435-44.)  She performs household chores, drives, and cares for her personal needs. (Tr. 449-50.)

The plaintiff underwent a consultative psychological examination in April 2002. (Tr. 339-42.)  Dr. Sibilla noted plaintiff's history of mental difficulties, and interpreted her responses during the interview as indicating minimal to mild difficulty in her usual and customary daily activities.  Dr. Sibilla diagnosed generalized anxiety disorder and possible alcohol abuse, and assigned the plaintiff a Global Assessment of Functioning ("GAF") rating of 70/75. (*Id.*)

State agency physicians reviewed the evidence of record in July and December 2002 and concluded that the evidence did not document the existence of a severe mental impairment. (Tr. 353-67.)

The plaintiff has been treated by psychologist Dr. Patel for her mental impairments since 1989. (Tr. 315.)  The record documents that in December 2001, the month of her alleged onset of disability, the plaintiff told Dr. Patel that she had quit her job because she had been making mistakes. (Tr. 338.)  The plaintiff was in a happy mood, and Dr. Patel did not change her treatment plan. (*Id.*)

In an October 2004 report, Dr. Patel described the plaintiff as exhibiting major depression with psychotic features, possible schizoaffective disorder, and a history of alcohol and drug abuse. (Tr. 369-75.)  He assigned plaintiff a GAF rating of 60, designating mild to moderate difficulty in social or occupational functioning. Dr. Patel did not believe the plaintiff could perform full time work due to paranoia, anxiety, and an inability to relate with other people,

despite not having used any drug or alcohol for two years. (*Id*.)  In an April 2005 report, Dr. Patel indicated that he was not aware of the plaintiff having used cocaine since 1989, and he diagnosed her cocaine abuse as being in full remission. (Tr. 421.)

Dr. Fisher, the vocational expert ("VE") at the plaintiff's administrative hearing, testified that if plaintiff were limited to medium work that involved only occasional interpersonal relations with co-workers, she could perform any of her past relevant jobs. (Tr. 459.)  Dr. Fisher identified a significant number of jobs the plaintiff could perform even if she were limited to sedentary-level work. (Tr. 460.)

The plaintiff first argues that the ALJ improperly evaluated the drug addiction or alcoholism (DAA) aspects of the case.  The three steps in the sequence from a materiality determination are as follows:

> 1. Does the claimant meet the disability standard?
>
> 2. Is their medical evidence of drug addiction or alcoholism?
>
> 3. Is the claimant's substance-use disorder "material" to the disability determination?

*See* 20 CFR §§ 404.1535-.1541, 416.935-.941, POMS DI 90070.050.

The first step requires the ALJ to follow the usual rules for disability case development and the sequential analysis of disability at 20 CFR §§ 404.1520, 416.920. The claimant's impairments, including any DAA impairments, and resulting functional limitations must be considered in making the disability determination. *See* 20 CFR §§ 404.1535(b)(2), 416.935(b)(2), POMS DI 90070.050B.1.  If the claimant meets the disability standard, the decision-maker moves to Step 2.

Medical evidence of DAA is defined as evidence that is from acceptable medical sources

6

and is sufficient and appropriate to establish an individual's medically determinable substance disorder. *See* POMS DI 90070.050C.1.  Acceptable medical sources are licensed doctors, licensed or certified psychotherapists, and persons authorized to send copies of medical records from medical facilities. *See* 20 CFR §§ 404.1513, 416.913.  Medically determinable substance use disorders are medical conditions described as "substance-dependence" and "substance abuse"
disorders in the Diagnostic and Statistical Manual of Mental Disorders (i.e., conditions in which the individual's maladaptive pattern of substance use leads to clinically significant impairment or distress). *See* POMS DI 90070.050C.2.

   If both of the above exist, then the ALJ must determine whether the DAA impairment is a contributing factor material to the disability determination. *See* 20 CFR §§ 404.1435(a), 416.935(a).  The key to the materiality determination is whether the evidence establishes that the claimant would not meet the disability standard if the substance use were to stop (i.e., without consideration of the effects of the substance use). *See* 20 CFR §§ 404.1435(b)(1), 416.935(b)(1), POMS DI 90070.050D.  This materiality determination requires the ALJ to evaluate which of the claimant's functional limitations would remain without the substance use and whether the claimant still meets the disability standard after the Social Security Administration considers any remaining limitations. *See* 20 CFR §§ 404.1435(b)(2), 416.935(b)(2), POMS DI 90070.050D.

   The plaintiff contends that the ALJ improperly evaluated the DAA issue.  The plaintiff argues that Dr. Patel found that she had "no useful ability to function" in areas of mental functioning, including maintaining attention and concentration for extended periods; work with or near others without being distracted by them; perform at a consistent pace; interact

appropriately with the public; and get along with co-workers and peers. (Tr. 374-75.) The VE testified that an individual would be unable to perform any competitive employment if he had "no useful ability to function" in any one of the areas, including maintaining attention and concentration for extended periods; work with or near others without being distracted by them; perform at a consistent pace; and get along with co-workers and peers. (Tr. 463-71.) The ALJ gave no weight to Dr. Patel's opinion because his treatment notes were replete with references to her use of alcohol and/or drugs, he did not attempt to sort out her mental impairments without the effect of substances, and although he opined that she was in full remission regarding drug and alcohol use, there was no evidence as to the veracity of the statement. (Tr. 15-16.) These were the sole grounds on which the ALJ rejected this medical opinion.

      The plaintiff argues that the ALJ may only reach a conclusion about whether a claimant's substance use disorders are contributing factors material to determination of disability after the ALJ has made an initial determination that the claimant is disabled, determined that there is medical evidence of drug addiction or alcoholism, and obtained substantial evidence on the record showing what limitations would remain in the absence of alcoholism or drug addiction. The plaintiff contends that the ALJ in the instant case did not follow any of the steps of the three-step procedure and, thus, the ALJ's decision reflects legal error which requires reversal.

      The plaintiff contends that her case is very similar to *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003). In *Brueggemann* the plaintiff's treating psychiatrist completed a disability assessment form in which he found that his patient's mental impairments left him with no useful ability to handle stress, and the vocational expert subsequently testified that no jobs were available to a person with that limitation. *Id*. at 692. In *Brueggemann* the ALJ rejected the

8

treating psychiatrist's opinion because under the current statute the use and abuse of drugs and alcohol and the consequent effects are not permitted to be used to form a basis for disability. *Id.* at 692-93.  The ALJ found the claimant in that case not disabled excluding this limitation found by his psychiatrist. *Id.* at 693. The Brueggemann Court found that this was a legal error which was harmful. *Id.* at 695.

In response, the defendant notes that the plaintiff alleged that she became disabled in December 2001.  The defendant further notes that the record does not document any change in her condition at that time, other than the fact that she decided to quit her job.  The plaintiff's treating psychologist did not see fit to change her treatment plan at that time. (Tr. 338.)  The defendant argues that it was reasonable for the ALJ to consider the plaintiff's ability to compile a lengthy work record despite her history of substance abuse, as well as the lack of any evidence of a deterioration of her condition at the time of her alleged onset of disability, as evidence that she continued to be able to perform substantial gainful activity. *Diaz v. Chater*, 55 F.3d 300, 308 n.4 (7th Cir. 1995) ("Although Mr. Diaz's employment was not continuous between 1984 and 1988, the ALJ could conclude that Mr. Diaz had exhibited sufficient residual functional capacity given the various positions he held during this period, because there is no evidence suggesting that Mr. Diaz stopped working at each job due to an inability to perform the job requirements.")

In the present case, the plaintiff does not contest the ALJ's assessment of her ability to perform the physical and exertional requirements of work. Instead, the plaintiff contends the ALJ erred in assessing the impact of her drug and alcohol abuse. (Plaintiff's Brief at 18-21.)  The defendant maintains that the ALJ was not required to determine whether the plaintiff's substance abuse was "a contributing factor material to a determination of disability" because the ALJ

reasonably found that the plaintiff was not disabled due to her combination of physical and mental impairments. Thus the defendant concludes that the ALJ was not required to consider the effect of the plaintiff's substance abuse on her ability to function.

The defendant acknowledges that the ALJ in *Brueggemann* incorrectly rejected the treating psychiatrist's opinion because the use and abuse of drugs and alcohol were not permissible bases for a finding of disability. However, the defendant insists that the ALJ in the present case committed no such error and that the ALJ considered all of the relevant evidence of record, and assessed the degree to which the plaintiff's ability to perform the mental and emotional requirements of work was impaired. The defendant concludes that because substantial evidence supported the ALJ's decision that the plaintiff remained capable of performing her past work despite her substance abuse, he was not required to determine whether such abuse was "a contributing factor material to disability."

The plaintiff continues to argue that the ALJ improperly evaluated the opinion of Dr. Patel. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is not inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870; *see also* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p. The ALJ must consider a variety of factors, including whether a physician is a treating or examining physician; the length, nature, and extent of the treatment relationship; the physician's specialty; and the consistency and supportability of the physician's opinion. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *see also* 20 CFR §§ 404.1527(a)-(d), 416.927(a)-(d). The ALJ must always explain the reasons for the weight given the opinion of the treating source, and he must not substitute his own judgment

10

for the physician's opinion without relying on other medical evidence or authority in the record. *Id*.; *see also* 20 CFR §§ 404.1527(d)(2), 416.927(d)(2).

The plaintiff first argues that although the ALJ is correct that the treatment notes of Dr. Patel are replete with references to abuse of alcohol and marijuana, the later clinical records show a change. In May of 2002 she reported that she had only smoked marijuana once in the last six months. (Tr. 338.) In September and December of 2003 she denied using marijuana. (Tr. 415.) In May of 2004 she reported that she had not smoked marijuana for two years. (*Id*.)

The plaintiff further argues that, contrary to the ALJ's claim, Dr. Patel did sort out her mental impairments from the effects of substance abuse. On question #12 of the questionnaire the plaintiff's attorney asked him to complete, he was asked to fill out the "Medical Source Statement of Ability To Do Work-Related Activities (Mental)," assuming no limitations related to drug and/or alcohol abuse and/or addiction. (Tr. 373.) The opinions about her mental abilities to work found by Dr. Patel and recorded on the "Medical Source Statement" form were used in the questions to the VE. (Tr. 374-75, 463-72.) Question #13 on the questionnaire does ask the doctor to explain why his patient would have the limitations, if any, that he finds without drug and/or alcohol use. (Tr. 373.) Dr. Patel referred to his narrative report regarding that question which is answered in the last paragraph of that report. (Tr. 370.) He reports that she becomes paranoid, suspicious, short of breath, and anxious, and is unable to relate with other people and cries without any apparent reason even though she has reported that she had not been using any drug or alcohol for two years. (*Id*.) The plaintiff states that this method is approved by Social Security for separating out such effects. *See* EM—96, "Questions and Answers Concerning DAA" (7/2/96). These materials indicate that a period of abstinence of at least one month is

11

satisfactory to determine whether these effects would remain should an individual stop drinking and/or using drugs. *Id.*  Thus, not only did Dr. Patel sort out these effects but he used an appropriate method for doing so sanctioned by the Social Security Administration.

Next, the plaintiff argues that the ALJ rejects this opinion because there was no evidence as to the veracity of the plaintiff's statements about her remission.  But there is no contrary evidence and at least to some extent the treating doctor can rely on such statements.  As the ALJ noted, the treatment records with Dr. Patel are full of references to her use of marijuana and alcohol, and the ALJ chose to believe those statements.  However, the more recent notes are that she is not using or abusing drugs and alcohol. (Tr. 338, 415.)  As the plaintiff sees it, the ALJ gives no reason why he believes her in the first instance and not the second, especially absent any contradictory evidence.  Furthermore, treating physicians may make reasonable assessments as a general matter about the seriousness of a disease based on objectively-supported diagnosis of the disease, the symptoms reported to them by their patients, and the progression of the disease and their medical understanding of the disease. *See* 20 CFR § 404.1528; *see also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (finding that a treating doctor's estimate concerning the frequency of epileptic seizures should have been credited by the ALJ even though the DIB applicant had not visited a doctor each time a seizure had occurred).  Furthermore, Dr. Patel had a long treatment relationship with this patient going back to 1989; thus, he was in a good position to give an opinion on this issue.

The plaintiff also contends that the ALJ did not consider some of the mandatory factors such as the length of the treatment relationship and supportability of the opinion.  Dr. Patel had a long treating relationship with this patient, having seen her in the hospital several times and

having treated her clinically back to 1989. The regulations require that these factors be considered in determining weight to be given such an opinion. Furthermore, Dr. Patel provided a lengthy two-page narrative report giving his opinions and explaining the basis for those opinions.

The defendant, in response, contends that the ALJ set forth appropriate reasons for rejecting Dr. Patel's conclusion. The defendant notes that the ALJ is not bound to accept the opinion of a treating physician if that opinion either lacks sufficient support in terms of medical signs and laboratory findings, or is either internally inconsistent or inconsistent with other credible evidence of record. 20 CFR § 404.1527(c)(2). The defendant states that the ALJ specifically addressed the areas in which he considered Dr. Patel's opinions lacked support and were inconsistent with other credible evidence of record. (Tr. 15-16.)

The ALJ's discussion of Dr. Patel's opinions is as follows:

> The claimant has been treated on a long term basis for her mental impairments by Jay Patel, M.D. (Exhibit 2F; 11F; 16F; 22F and 24F). The psychologist noted he had last seen the claimant on June 15, 2004. He stated the claimant had a diagnosis of major depression with psychotic features, possible schizoaffective disorder; history of alcohol and drug abuse with a current global assessment of functioning (GAF) of 60, considered mild to moderate difficulty in social or occupational functioning. In reporting his assessment of the claimant's ability to perform work related activities, the psychologist opined that he did not think the claimant could perform full time work. However, his treatment notes are replete with references to the claimant's use of alcohol and/or drugs, and the psychologist does not attempt to sort out the claimant's mental impairments as they would be without the effect of the substances. Although the psychiatrist opined the claimant was in full remission regarding drug and alcohol use, there is no evidence to the veracity of the statement (Exhibit 22F).

(Tr. 15-16.)

13

It is clear that the ALJ failed to take note of Dr. Patel's completed questionnaire and explanatory report. (Tr. 370, 373.) Although Dr. Patel did not elaborate on the situation, he did effectively state that the plaintiff would have her limitations without drug and/or alcohol use, and that even without the effects of drug and/or alcohol use she could not function at work "because she becomes paranoid, suspicious, short of breath, and anxiety goes up. She is unable to relate with other people and she cries without any apparent reason even though the patient reported that she has not been using any drug or alcohol for 2 years." Therefore the ALJ's evaluation of Dr. Patel's opinion was erroneous and warrants a remand of this case. The law is clear that the ALJ must at least consider Dr. Patel's opinion because he did in fact discuss the plaintiff's level of impairment disregarding the effects of drug and alcohol abuse.

The plaintiff further argues that the ALJ failed to properly evaluate her symptom testimony. The first reason the ALJ found the plaintiff's testimony not credible was because she was not always compliant with prescribed medical treatment as records indicated she took herself off her anti-depressant for three months and continued to abuse alcohol and marijuana. (Tr. 16.) However, as the plaintiff notes, this refers to an incident occurring in 1991. In his decision the ALJ refers to Exhibit 24F (Tr. 387-92), and the particular incident appears to be recorded in a document dated 1991. (Tr. 391-92.) The plaintiff argues that is very stale evidence to rely upon for a finding. The plaintiff also notes that the fact that a psychiatric patient does not follow through on counseling or take antipsychotic drugs regularly is a common consequence of being psychotic. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). The ALJ did not take that into account in making his credibility decision, and under SSR 96-7p the ALJ must take into account the reasons for not following through on treatment.

14

Second, the ALJ finds the plaintiff's denial of the use of crack cocaine despite a medical record to the contrary is sufficient to discredit her testimony. But a close review of the records supports her denial. The evidence the ALJ refers to is a discharge summary from Parkview Hospital of 1989 which refers to "drug abuse" and "crack." (Tr. 212.) However, the drug testing done by the hospital during that hospitalization was negative, and the drug screening during the hospitalization the previous months showed possible cannabinoids. (Tr. 226-27.) The cannabinoids refers to marijuana and not crack cocaine. Furthermore, her reports of a substance use to medical personnel refer only to marijuana and alcohol, and there is no further reference in the records to any alleged crack cocaine use. (Tr. 204, 221-22, 247, 294-95, 303, 318, 329, 338, 340, 388, 391-92, 415, 421.) Thus, this reference appears to be a mistake and is insufficient to discredit her symptom testimony.

Third, the ALJ discredits the plaintiff's testimony because she did not seek much treatment for physical impairments. But her testimony regarding concentration and dealing with people has to do with her mental limitations, not her physical ones. (Tr. 443-44.) Thus, this reason is not sufficient to discount her symptom testimony. Finally, the ALJ discredits the plaintiff's symptom testimony based on a lack of objective evidence. But the ALJ does not explain why the objective evidence is insufficient. Furthermore, as explained above Dr. Patel provided a detailed two-page report, and the ALJ did not find that objective evidence did not support his opinion.

This court finds that the ALJ did not properly evaluate the plaintiff's symptom testimony, as his decision is replete with errors regarding the medical evidence.

Accordingly, this matter will be remanded to the Social Security Administration for

further proceedings.

## Conclusion

Based on the foregoing, this case is hereby REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

Entered: April 17, 2007.

s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
